OPINION OF THE COURT
Ira B. Harkavy, J.
Some of my colleagues have taken the position that utilities are in the business of taking advantage of customers. In the instant case we have the unique situation of a customer taking advantage of a utility and the utility even co-operating in increasing its loss.
May a party, who has obtained services by willfully misrepresenting himself as an officer of a corporation, when said services were provided without a security deposit in reliance upon that party’s express representation that he is an officer of the corporation, later disclaim liability for said services on the grounds that he in fact had nothing to do with the corporation? We think not.
Plaintiff, Brooklyn Union Gas, brought the instant proceeding to affirm its right to transfer an open bill for services supplied to premises 2044 Nostrand Avenue, *700 Brooklyn, in the sum of $22,028.95, to premises 349 Linden Street, Brooklyn, and for permission to remove the meter from the latter premises due to nonpayment of the bill from the former premises.
The court finds the facts to be as follows. On October 23, 1980 Martin Riskin filed an application with Brooklyn Union Gas Company for service at premises 2044 Nostrand Avenue. Mr. Riskin signed the application “Hadley-White Management Corp., by Martin Riskin Sec’y”. While he does not dispute signing the application as such, Riskin later testified that he was not then, nor at any time, an officer of Hadley-White Management Corp. The same application also provided space to list “other gas accounts under the corporation name.” In response, Riskin listed “349 Linden Street Acct. #947-59502 and 4218 104 St. Acct. #7540-3924”. The application also requested proof of title or ownership. In response, Riskin had listed “Deed-Date of filing October 17, 1980 — lawyer Allan Silver-man”. The mailing address for the account was listed “Allan Silverman, Esq., 600 Old Country Road”. Silver-man was also listed as president of Hadley-White Management Corp.
Based upon Riskin’s application the plaintiff opened service at 2044 Nostrand Avenue in the name of HadleyWhite Management Corp. without demanding a security deposit. No payment on the account was ever made by anybody. As of May 19, 1981, there was an aggregate amount due of $15,985.75 which remains unpaid to date. On September 15, 1981 plaintiff transferred the balance due on 2044 Nostrand Avenue to 349 Linden Street which account was also in the name of Hadley-White Management Corp. Thereafter this proceeding was commenced to remove the meter and cease service to 349 Linden Street based upon the delinquent amount due on the transferred account.
Riskin and Silverman, the admitted owners of 349 Linden Street, dispute plaintiff’s right to transfer the delinquent account and remove the meter at 349 Linden Street based upon the $15,985.75 due on the 2044 Nostrand Avenue account. They contend that plaintiff’s transfer should be disallowed because Riskin and Silverman have *701 no proprietary interest in 2044 Nostrand Avenue. It is the finding of the court however that they are bound to the extent of the lost security deposit by Riskin’s misrepresentations on the October 23, 1980 application for service.
At a hearing held by this court, both Riskin and Silver-man testified that they were the joint owners of 349 Linden Street. They originally took title in the name of “Nedlin Realty Corp.” by deed dated October 17,1979 and recorded in the register’s office on October 25, 1979. Thereafter, on or about March 27, 1980, the corporation deeded the property to Riskin and Silverman individually by deed recorded in the register’s office on May 1, 1980. Although the owners of the property were originally Nedlin Realty Corp. and thereafter Riskin and Silverman, the account with plaintiff was opened on October 17, 1979 by Riskin in the name of Hadley-White Management Corp. To date, that account remains in the name of Hadley-White Management Corp. and although Silverman and Riskin allege that the corporation has no relationship to the property, the bills are paid by Silverman with Riskin & Silverman partnership checks.
Both Riskin and Silverman admitted and testified that the accounts for both premises were opened by Riskin in the name of Hadley-White Management Corp. However they now claim that neither of them were ever officers of the corporation although listed as such. They both testified that the real stockholder and officer of Hadley-White Management Corp. was Allan Silverman’s father. The records of the county clerk show Allan Silverman and his father as the incorporators of the corporation. Plaintiff extended credit at the request of Riskin’s representation on the application. No deposit was required due to representations that placed the account for both properties in a corporation of which Silverman was president and Riskin was secretary.
A review of the records of the register’s office shows that 2044 Nostrand Avenue was purchased by 324 Management Corp. on October 22, 1980 and thereafter sold to Sherryl Porter and to Tanzua Bedasse on October 7, 1981.
*702 Several facts become quite clear. First, there is no communality of ownership of the two buildings. Second, Riskin and Silverman, for whatever reason they had, misled the plaintiff by opening the accounts in both buildings in the name of Hadley-White Management Corp. whom they now assert had no interest in either building. Silverman and Riskin admitted that they were involved with financing the construction on 2044 Nostrand Avenue so the court may speculate that their financial dealings induced them to open an account in a building in which they had no proprietary interest. But irrespective of their motives, it was Silverman who received the bills for both properties and who knew or should have known that the bills for 2044 Nostrand Avenue were not being paid and that the account was delinquent, and the court notes that at no time did Silverman offer any explanation as to why he failed to notify Brooklyn Union Gas of their billing “error”. Plaintiff would have required a deposit had it been aware of the true situation. Such a deposit would have at least mitigated plaintiff’s loss to a certain extent. A benefit was obtained due to the misrepresentations on the application. If transfer of the Nostrand Avenue account and removal of the meter at 349 Linden Street were disallowed plaintiff, it would be tantamount to sanctioning the opening of service accounts in fictitious names. Regardless of whether or not Riskin and Silverman were or are affiliated with HadleyWhite Management Corp., they cannot be permitted to benefit from their misrepresentation. To further exacerbate an already unjust situation, it should be noted that the misrepresentation continues to this very day with the 349 Linden Street account still in the Hadley-White Management Corp. name.
The Public Service Commission has permitted the practice of transferring balances where it can be established by competent proof that the responsibility for bill payment at both locations is the same. The Appellate Division, First Department, stated: “From very early times it has been held that a company supplying gas and electric service may refuse to continue to supply a customer who is indebted to it even though the indebtedness is for service *703 supplied to an address other than the one at which the customer is then receiving service.” (Dworman v Consolidated Edison Co. of N. Y., 26 AD2d 535.)
Although Mr. Riskin and Mr. Silverman were not the owners of premises 2044 Nostrand Avenue at the time of the application for service, they were the cause of Brooklyn Union Gas Company extending service to the building without deposit. Their actions caused the plaintiff to lose money due to the extension of credit granted because of the misrepresentation. Their, action may result in higher rates to the general public who pay their bills. Under section 12 of the Transportation Corporations Law, plaintiff is obliged to supply gas service when it is applied for. But obligations cannot be unilateral. Utilities are as entitled to expect truthful representations on service applications as are applicants entitled to expect service. The transfer of the open account from premises 2044 Nostrand Avenue for gas service from October 23, 1980 to May 19, 1981 in the name of Hadley-White Management to the account in the name of Hadley-White Management at 349 Linden Street was proper to the extent pf the lost security deposit and in line with the representations of the admitted owners of 349 Linden Street.
On the other hand, plaintiff’s handling of the instant matter was less then exemplary. When Riskin applied for service he listed as proof of title or ownership of the premises “Deed-Date of filing October 17,1979.” Plaintiff’s employees evidently accepted this information at face value and did not require Riskin to substantiate the facts on his applications. Residential consumers are well aware that if through innocent oversight they fail to make timely payment of utility bills, they are almost immediately inundated with written threats of termination of service. It is amazing that in the instant action, plaintiff continued service and permitted bills to accumulate for over seven months. It should have been evident to the plaintiff that when a large account for a multiple dwelling remains entirely unpaid for seven months something is drastically wrong, especially when the same parties were paying the bills for their other accounts. Plaintiff has failed to establish to the court’s satisfaction that it expeditiously acted to *704 terminate service and thus minimize its loss. The court cannot condone the haphazard administrative policies that are the major contributing factor towards plaintiff’s pecuniary loss in this proceeding. Therefore, the court will only permit plaintiff to transfer the amount it would have had in its possession if they had received the security deposit had Riskin not misrepresented himself as an officer of Hadley-White Management Corp. which had a good payment record on its other payments. The court finds that the security deposit would have been $4,000.
In the event the $4,000 is not paid within 60 days after service of an order permitting Brooklyn Union Gas Company to turn off the service and remove the meter with notice of entry upon the attorney for the defendant, service to the owner of the building at 349 Linden Street may be discontinued and the meter removed. Settle order for the turnoff based upon the above.